Filed 7/29/26; Certified for Publication 8/5/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CALIFORNIA HIGHWAY PATROL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>    Defendant and Respondent;<br><br>NATHANIEL PARTRIDGE,<br><br>    Real Party in Interest and Respondent. | B336135<br><br>(Los Angeles County<br>Super. Ct. No. 22STCP03433) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Affirmed.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kenneth C. Jones and Jaclyn V. Younger, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Mastagni Holstedt, Jason M. Ewert and Melissa M. Thom for Real Party in Interest and Respondent.

—————————————

The California Highway Patrol (CHP) dismissed officer Nathaniel Partridge from employment for claiming unearned overtime compensation and failing to properly complete records. Partridge appealed his dismissal to the California State Personnel Board (SPB), which reduced the penalty to a one-year suspension. The CHP filed a petition for writ of mandate, asking the superior court to vacate the suspension and impose the penalty of dismissal. (Code Civ. Proc., § 1094.5.) The trial court denied the petition, finding the SPB did not abuse its discretion in imposing the one-year suspension. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are largely undisputed, and the only issue on appeal is the appropriateness of the penalty imposed.

I.    Factual Background

In the Maintenance Zone Enhanced Enforcement Program (MAZEEP), the CHP provides the California Department of Transportation (Caltrans) with traffic enforcement, monitoring, and other safety services for highway maintenance projects. Caltrans reimburses the CHP for the actual cost incurred at the time of the services.[1]

Prior to 2011, the East Los Angeles CHP office (ELA) implemented a Standard Operating Procedure (SOP) for scheduling overtime for uniformed personnel, and the Highway

---

[1]    Under the CHP's collective bargaining agreement, officers on a MAZEEP overtime assignment who work less than four hours are paid for a minimum of four hours. Officers who work over four hours receive compensation for the hours worked. That provision is not relevant to this appeal.

2

Patrol Manual (HPM) required the officer to record the start and finish time of the actual overtime worked. In 2011, Sergeant Kelley Moore, the Administrative Sergeant in the ELA office from approximately October 2010 until 2016, learned officers who had been released from MAZEEP overtime assignments earlier than the scheduled end times were going home when released but still collecting compensation for the entire overtime detail period. Moore believed this violated overtime policies, but other sergeants believed officers should receive compensation for the full scheduled MAZEEP overtime even if they were released early by Caltrans.

The SOP was modified in 2012 to permit officers to receive full overtime compensation if a MAZEEP overtime detail ended early as long as they returned to and remained at the ELA station for the duration of their overtime shift. The policy, drafted by Moore at the direction of Administrative Lieutenant Cesar Murillo, provided, "Officers working overtime such as . . . MAZEEP details shall remain available during the duration of the reimbursable contract. If Caltrans ends a detail early due to unforeseen circumstances but continues to pay the officer the duration of the contract, the officer shall remain available to Caltrans by standing by at the office." Sergeants notified officers of the policy change during daily briefings, and the SOP was posted on the bulletin board where overtime opportunities were posted.

After the revision of this policy, there were several instances of officers leaving for home or other personal destinations instead of remaining at the ELA office after early release from a MAZEEP detail. Murillo and other sergeants were aware of the practice and did not take any immediate measures

3

to correct the policy violations.  Murillo, who retired in 2016, believed it was acceptable for officers to go home as long as they could return to the office within a reasonable time.  Lieutenant Derek Moulton, the Administrative Lieutenant for the ELA office from 2016 to 2018, was unaware of the SOP requirements.  Captain Paul Medeiros, who supervised both Murillo and Moulton, was aware of the SOP but was unaware that some officers were not following it.  Lieutenant Melissa Hammond, who was responsible for overseeing overtime policy and compliance at the ELA office from September 2016 to August 2018, was unaware of the MAZEEP SOP.

CHP officers record their time worked and the activities performed during their shift on Daily Field Records (Form 415). There is an overtime box on the form in which the officers are expected to enter the start and end of the actual time worked.  In submitting the Form 415, the officer certifies the information recorded is true and correct.  Form 415 is used to calculate officers' pay, and officers must fill it out in order to be paid.

Each time an officer uses a patrol vehicle, they are expected to fill out by hand the required information on the Driver's Equipment Check form (Form 33).  The form includes boxes for the officer to write their name, the date, when the vehicle was checked out and returned, the odometer readings at checkout and return, total miles driven, and gasoline added, if any.  These forms are for automative maintenance purposes, and not reviewed by ELA management.

Officers working MAZEEP assignments were also expected to complete a MAZEEP Daily Report Form following the completion of the assignment.  On this form, a Caltrans crew leader or a supervisor in charge of the Caltrans crew recorded the

4

date, Caltrans report number, project location and description, and a description of the maintenance work performed.  The CHP officer working the assignment was required to record their name; ID number; rank; patrol car number; the patrol car's starting mileage, ending mileage, and total mileage; and the start time, end time, and total time of the detail.  At the end of the MAZEEP detail, the CHP officer initialed the form to certify the information they entered on the form was true and accurate, and the Caltrans crew leader or supervisor signed to approve the form.

CHP officers are expected to fill out documents honestly and accurately.

Partridge, hired as a CHP patrol officer in 2006, worked at the ELA office.  In his 2015–2016 performance appraisal, he received excellent or proficient marks in all categories.  His rater described him as conscientious, polite, courteous, outstanding in communication skills, able to prioritize and complete tasks in a timely manner, dependable, consistent, well-organized, efficient, and accurate.  Partridge "continually demonstrate[d] a thorough and comprehensive understanding of departmental policies and procedures," had an excellent attitude, took his role seriously, was willing to assist whenever needed, and did a "thorough and comprehensive job" as a school bus officer.  Partridge was awaiting a promotion, and his rater believed him ready for a supervisory role, as Partridge possessed "maturity, good judgment, and leadership skills," and was "a true leader."

Partridge worked MAZEEP overtime details.  He knew the SOP required officers to remain at the ELA office if a MAZEEP assignment ended before the scheduled time, and he had been advised by a sergeant that if a MAZEEP overtime assignment

5

ended earlier than scheduled, the officer was required to remain on standby at the ELA office for the duration of the originally scheduled assignment. Partridge believed officers commonly went home after being released early from MAZEEP details and returning their patrol vehicles, and he thought it was acceptable to ELA managers for officers to go home under those circumstances but to claim overtime for the full scheduled assignment, as long as they could respond back to the ELA office if needed before the end of the scheduled MAZEEP assignment. He often observed civilian vehicles leaving the ELA parking lot and assumed officers were returning home after early release from a MAZEEP overtime detail.

On September 17, 2017, Partridge's MAZEEP assignment ended early at 10:20 a.m. Officer Doris Peniche, who worked the same detail as Partridge, completed a MAZEEP Daily Report for both of them. She entered a 4:30 a.m. start time and a 2:30 p.m. end time on the form. A Caltrans employee signed and approved the form.

Partridge returned to the ELA office and refueled his patrol vehicle at approximately 10:22 a.m. He completed the Form 33, entering 11:00 a.m. as the time he returned the vehicle to the ELA office. He changed out of his uniform, got in his personal vehicle, and left the ELA office for his home, 35 miles away. Cellular phone data showed Partridge was already on his way home around 10:45 a.m., 15 minutes earlier than the time he reported returning the patrol vehicle.

The Form 415s Partridge submitted for his MAZEEP overtime assignment on September 17, 2017,[2] indicate he started

---

[2] Due to CHP timekeeping methods and shift times, Partridge completed two Form 415s for the relevant MAZEEP

6

his shift at 4:30 a.m. and ended his shift at 2:30 p.m. He had only worked six hours and 15 minutes, and was then at home for the remainder of the detail. Based on Partridge's Form 415s, he was compensated for 10 hours of overtime for September 17, 2017, even though he left the ELA station before the end of the MAZEEP assignment.

In 2019, Partridge was investigated and interrogated in connection with an audit of the MAZEEP program. Partridge admitted that on September 17, 2017, he left the ELA office and went home before the stated end of the overtime detail. Partridge acknowledged he was familiar with the ELA SOPs as they related to remaining available at the office through the end time of overtime detail, and he had not followed policy and procedures in that regard. Partridge stated, "I took the chance to go home and would fall on the consequence if I was called back." He also admitted that on two or three occasions he may have gone home early but had been paid for full overtime hours.

The CHP determined Partridge had dishonestly reported his time on September 17, 2017, and was fraudulently compensated $288.98 for approximately three hours, 45 minutes of overtime to which he was not entitled. Additionally, the CHP found he violated policy on eight occasions in 2017 and 2018 when he failed to properly report the time he returned his patrol vehicle on the Form 33. On seven of those occasions, Partridge worked a MAZEEP overtime assignment, checked out a patrol vehicle, entered on the Form 33 the time he checked out the

---

overtime detail: the first hour was considered part of the previous day's graveyard shift, while the rest of the detail was considered part of September 17, 2017.

vehicle, but either did not enter the time he checked the vehicle back in or drew a right-pointing arrow in the box for the time the vehicle was checked in, indicating he had the vehicle for the entire scheduled assignment. On an eighth occasion, Partridge worked a MAZEEP overtime assignment with another officer, who entered the time they checked out the patrol vehicle and drew a right-pointing arrow in the box for the time the vehicle was returned to indicate they had the vehicle for the full scheduled shift; Partridge did not correct the form.

On February 7, 2020, the CHP served Partridge with a Notice of Adverse Action dismissing him from his position as a CHP officer for inexcusable neglect of duty, dishonesty, misuse of state property, violation of the prohibitions set forth in Government Code section 19990, and other failure of good behavior (Gov. Code,[3] § 19572, subds. (d), (f), (p), (r), (t)).

II.    Administrative History

Partridge appealed his dismissal to the SPB, and an evidentiary hearing was held in 2021. On August 18, 2021, the Administrative Law Judge (ALJ) issued his proposed decision.

The ALJ found Partridge's failure to comply with the overtime SOP and his failure to properly complete Form 33s constituted cause for discipline under section 19572, subdivision (t), other failure of good behavior. Additionally, Partridge violated his known duty when he repeatedly omitted the time he returned patrol vehicles from the otherwise complete Form 33s. While this appeared to be careless and was not proven to be

---

[3]    Further undesignated statutory references are to the Government Code.

intentional, it was nonetheless a pattern over six months. Because of the repetition and the potential harm resulting from the failure to properly record times on Form 33, the ALJ found Partridge's conduct was grossly negligent and an inexcusable neglect of duty. (§ 19572, subd. (d)).

The ALJ dismissed all other charges. While the ALJ found Partridge intentionally violated his known duty to remain at the ELA office by going home after being released early from the MAZEEP overtime shift, the ALJ concluded it was not an inexcusable neglect of duty (§ 19572, subd. (d)) because the evidence did not show the CHP intended to enforce the SOP.

With respect to the claim of dishonesty (§ 19572, subd. (f)), the ALJ believed Partridge's denial of any intent to deceive when he claimed overtime compensation for his full scheduled shift despite returning home rather than remaining at the ELA office. The ALJ noted that while the Highway Patrol Manual required officers to record the start and finish time of actual overtime worked, the ELA overtime SOP explicitly provided Caltrans could continue to pay officers for the rest of their scheduled shift if Caltrans ended the assignment early. Although the overtime SOP directed that officers were to remain standing by at the office, there was no option to forego claiming compensation for the full scheduled assignment and elect to go home after dismissal by Caltrans. The ALJ observed a Caltrans employee had signed the form approving the 10 overtime hours for Partridge, and found that because Caltrans authorized payment for the entire scheduled assignment even though it ended early, Partridge's claim of the full overtime for September 17, 2017 did not by itself indicate he intended to deceive the CHP when he entered 10 hours on his Form 415s.

9

Nor did Partridge's other conduct on September 17, 2017, convince the ALJ that he had attempted to deceive the CHP. Partridge did not try to conceal that he returned his patrol vehicle before the end of the scheduled overtime shift; he entered 11:00 a.m. on his Form 33, a time reasonably close to when he left the ELA office.

It was significant to the ALJ that this was not a case in which an employee claimed compensation for time they were not working during a time they were supposed to work. Partridge was not expected to perform any tasks after being released by Caltrans, yet he was permitted by the overtime procedures to be compensated for the remainder of the scheduled assignment. Also, Caltrans had never called Partridge back to complete an overtime assignment after releasing him early, and other witnesses could not remember any occasion in which Caltrans recalled an officer after early release. "Under those circumstances," the ALJ concluded, Partridge's "leaving to go home on one occasion, though violating paragraph 9 of the Overtime SOP, did not indicate an intention to deceive."

The ALJ found Partridge's testimony credible: he testified clearly, consistently, and in a straightforward manner, and he readily admitted he left the ELA office to go home before the end of the scheduled overtime shift but claimed the full 10 hours of overtime compensation. This was essentially consistent with his admissions and other statements during his internal affairs investigation. Therefore, the ALJ credited Partridge's denial of an intention to deceive. Because the ALJ did not find Partridge intended to deceive, he dismissed the charge of dishonesty (§ 19572, subd. (f)).

10

The ALJ dismissed the charge of misuse of state property (§ 19572, subd. (p)) because Partridge was not intentionally misusing state time by going home. He was not required to perform any duties while remaining at the ELA office after early release from a MAZEEP detail, and it was not unreasonable for Partridge to believe ELA management allowed him to go home instead of waiting at the ELA office as long as he could return within a reasonable time if needed, given that Murillo, an administrative lieutenant, shared that understanding.

Finally, the ALJ dismissed the charge under section 19572, subdivision (r) that Partridge had violated the prohibitions in section 19990, the incompatible activity statute. Although Partridge claimed full overtime pay despite departing early for home after early release from a MAZEEP detail, he was not required to be doing any work during that time period, and he did not perform transactions for a personal side business or otherwise engage in any activity clearly prohibited by the CHP's incompatible activities policy.

Finding dismissal too harsh a penalty for an officer with no prior adverse actions who admitted his errors and had not been proven to be dishonest, the ALJ modified the dismissal to a one-month suspension.

III. SPB Determination

The SPB rejected the ALJ's proposed decision. On June 20, 2022, after briefing and oral argument, the SPB issued its decision.

Like the ALJ, the SPB found Partridge violated his duty to complete required forms accurately and completely when he routinely omitted the time he returned patrol vehicles to the station. The SPB agreed with the ALJ that failing to fully

11

complete the Form 33 on eight separate occasions over a six-month period constituted inexcusable neglect of duty and other failure of good behavior (§ 19572, subds. (d), (t)).

The SPB, however, disagreed with the ALJ's remaining conclusions and found Partridge's claim of unearned overtime for September 17, 2017, constituted an inexcusable neglect of duty, dishonesty, misuse of state property, a violation of section 19990 prohibitions, and other failure of good behavior (§ 19572, subds. (d), (f), (p), (r) & (t)).  As the ALJ found the evidence established the SOP clearly required officers working MAZEEP details to remain at the ELA office for the remainder of the detail if released early by Caltrans, and Partridge knew about this policy, the SPB concluded Partridge, "as a peace officer, knew his action violated the expressed overtime policy when he chose not to remain at the ELA office after an early release from a MAZEEP detail and yet claimed full overtime hours on his Form 415.  He knew doing so would result in him receiving public funds for time he was not otherwise entitled to claim."

Unlike the ALJ, the SPB found the fact that ELA officers routinely ignored the SOP without adverse consequences did not excuse Partridge's conduct: "Management's neglect in overseeing its personnel does not necessarily excuse wrongful behavior engaged in by their officers.  Viewed differently, if management turns a blind eye to a particular scheme or pattern of misconduct, such does not legitimize the scheme or misconduct.  For example, management that routinely ignores sexually inappropriate behavior that violates the employer's no-sexual-harassment policy does not then make it permissible for other employees to engage in the same offensive conduct without consequences.  After all, peace officers are held to a higher standard of behavior

12

than other civil servants. [Citation.] CHP officers swear to a Code of Honor that holds in part, 'My personal conduct shall, at all times, be above reproach and I will never knowingly commit any acts that will in any way bring discredit upon the California Highway Patrol or any member thereof.' That high standard of behavior minimally includes observing and following CHP policies especially under circumstances where convenient skirting of those polices would result in self-enrichment at the expense of the public's trust."

The SPB found Partridge's submission of false information on his September 17, 2017 Form 415s was an inexcusable neglect of duty (§ 19572, subd. (d)). Policy clearly required officers to record the start and finish time of all overtime worked, and Partridge knew how to complete Form 415. Partridge left the office early, and although he knew he was not permitted to claim the hours he was not present at the office, he did it anyway. The SPB rejected Partridge's claim he could not be disciplined for failing to follow the SOP because the evidence showed the CHP did not intend to enforce it. The written policy governing overtime compensation on MAZEEP details was clear. While there was evidence some officers impermissibly claimed overtime even though they did not follow the policy, the SPB concluded the evidence showed ELA's turnstile leadership was either unaware of the requirements or was not aware of personnel violating the SOP. Moreover, even if management may not have been enforcing the SOP, Partridge, "as a peace officer, should have known that receiving compensation for time not worked is reasonably viewed as misappropriation of public funds."

The SPB found Partridge engaged in dishonesty by claiming unearned overtime pay: Partridge "knew what was

13

required of him under the SOP. He knew he must remain on standby at the office if he wanted to claim compensation for the entire detail. He acknowledged that violating the policy could result in him being removed from future overtime assignments and subject to discipline. Nonetheless, he entered work hours on Form 415 for which he knew he could not lawfully claim. His deliberate entry of a false end time for the purpose of claiming full overtime compensation is, by its very act, dishonest. Regardless of the prevalence of any illicit scheme for which ELA management were unintentionally or intentionally ignorant of, [Partridge] could not have reasonably believed his Form 415 was accurate for September 17, 2017. His conduct, therefore, constitutes cause for discipline under . . . section 19572, subdivision (f), dishonesty."

The SPB was not persuaded by the facts that had convinced the ALJ that Partridge did not intend to deceive the CHP. Although the ALJ considered Partridge's relatively accurate report on his Form 33 of the time he returned his patrol vehicle on September 17, 2017, to indicate an absence of deceptive intent, the SPB concluded the ALJ gave that too much credence because "entering the actual time the patrol vehicle is returned to the station on Form 33 is not determinative of whether an officer would be entitled to claim the full overtime compensation for the shift. What is determinative is the information entered on Form 415," which in Partridge's case was false.

The SPB also concluded the ALJ placed too much significance on the facts that officers did not have to do any work if they are released early from a MAZEEP assignment and that officers who chose not to remain at the ELA office were rarely, if ever, called back to the office. The SPB noted the purpose of the

14

SOP is not to address whether an officer was actively working after early release from a MAZEEP detail; it is "to ensure the officer's availability for service if called upon and not to gift public funds to an officer who decides to end their day and head home." Moreover, Partridge knew he lived too far away to be considered readily available if called upon to return.

The SPB found Partridge's submission of false information to receive unearned compensation constituted deceptive behavior to acquire state funds for personal gain, a misuse of state property (§ 19572, subd. (p)). Claiming time for hours he had not worked was inimical to his duties as a public servant and peace officer, because the public was entitled to trust that law enforcement officers were not engaging in deceptive practices or violating laws or policies for their own gain; this violated section 19572, subdivision (r). Finally, because Partridge's misconduct in claiming compensation to which he was not entitled was directly related to his job, reflected poorly on himself and the CHP, and presented a public concern regarding failure to properly administer taxes, it was cause for discipline under section 19572, subdivision (t), other failure of good behavior.

In determining the appropriate penalty, the SPB identified the relevant factors set forth in *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 218 (*Skelly*): the extent to which the employee's conduct resulted in, or if repeated is likely to result in harm to the public service, the circumstances surrounding the misconduct, and the likelihood of its recurrence. The SPB concluded Partridge harmed public service when he knowingly violated written policy to claim compensation for hours he did not work and was not legally entitled to claim. His actions could easily cause members of the public to question the integrity of the

15

CHP and its officers. Dishonest conduct such as Partridge's is highly injurious to their employer because peace officers are held to higher standards of conduct than civilian employees. Notwithstanding this high standard of conduct, however, the SPB noted each individual case of alleged wrongdoing and the appropriate discipline must be assessed based upon the totality of the circumstances.

While Partridge had engaged in dishonest conduct by seeking overtime pay for the full MAZEEP detail on September 17, 2017, the SPB was not convinced this incident demonstrated he had a disposition toward dishonesty or deception. Partridge did not demonstrate a pattern or practice of claiming unearned overtime compensation, unlike most officers dismissed for claiming unearned MAZEEP overtime pay. Rather, "the evidence here showed a singular charged occasion where [Partridge] made a poor choice to claim three-plus hours of unearned overtime compensation. This isolated charged event does not necessarily suggest [he] has a propensity or disposition to lie, cheat, or deceive." Indeed, Partridge, a CHP officer since 2006, was a good employee who had never suffered any prior disciplinary actions and had received excellent or proficient performance ratings in recent years, and this "lengthy, disciplinary-free tenure is deserving of serious consideration especially in light of the singular occasion of claiming unearned overtime and a minor transgression in his haphazard completion of CHP forms."

The SPB found dismissal to be a punishment out of proportion with Partridge's wrongdoing. The SPB did not believe there was a tremendous likelihood the conduct would recur considering the limited nature of the offense, the CHP's disciplinary actions against officers who abuse the public trust in

16

failing to adhere to policies, and "the stern discipline" it was imposing.  The SPB found a one-year suspension resulting in the loss of a year's salary was "just and proper under the circumstances of this case.  The lengthy suspension would necessarily impart upon [Partridge] that dishonest behavior by a peace officer is condemnable and will always be deserving of severe penalty up to and including dismissal.  The Board is hopeful that [Partridge] would take heed of this lengthy suspension and ensure that his continued employment with CHP would be guided by strict adherence to CHP's policy and to do what is right regardless of what others may do."

IV.    Petition for Writ of Mandate

The CHP filed a petition for writ of mandate asking the trial court to direct the SPB to vacate its penalty decision and uphold the CHP's decision to dismiss Partridge.  The CHP alleged the SPB abused its discretion by "imposing a one-year suspension for a sustained charge of dishonesty by a peace officer.  Dishonesty alone warrants dismissal, but Partridge was also found to have engaged in inexcusable neglect of duty, misuse of state property, incompatible activities, and other failure of good behavior.  Such conduct is not consistent with law enforcement purposes and philosophy and violates the public trust."

The trial court denied the petition for writ of mandate.  As Partridge's discipline was based on a single incident of claiming three hours 45 minutes of unearned pay, the court found it was within reason for the SPB to find Partridge's conduct did not necessarily indicate a propensity to cheat, deceive, or defraud.  Indeed, the SPB noted Partridge's lack of prior discipline and his positive evaluations.  The court concluded it was not outside the bounds of reason for the SPB to determine that under the

17

circumstances presented, dismissal would be a disproportionate penalty and a one-year suspension would be appropriate.

Although the CHP argued that Partridge's eight instances of omitting the time he returned his patrol vehicle to the station from the Form 33 made it difficult for CHP management to detect an early return, the court noted the SPB's finding that the Form 33 return time is not determinative of whether an officer would be entitled to claim full overtime compensation for a shift. Therefore, while Partridge did not comply with policy in completing the forms, the court found it was not unreasonable to conclude Partridge's failure to enter the time he returned his patrol vehicle was not indicative of an intent to conceal his lack of entitlement to overtime pay or probative of his honesty concerning overtime claims.

The trial court found the CHP's argument that Partridge admitted he may have gone home early two or three times not fully accurate: he said he had "possibly" left the East Los Angeles area two or three times. Also, the CHP did not charge him with more than one false claim of overtime. Accordingly, the court did not find Partridge's "vague concession" sufficient to punish him for purportedly engaging in additional acts of dishonesty beyond the one with which he was charged.

The court acknowledged Partridge's misconduct in claiming unearned overtime was serious and warranted significant discipline but concluded it could not say that a "one-year suspension without pay [wa]s unreasonable, considering the proportionality of the discipline to the single offense and Partridge's lack of prior discipline in his 16 years of employment with CHP. Even though Partridge did not enter his return time

on the [Form 33] on eight occasions, none of those occasions was meaningfully linked to a false claim for overtime."

The court acknowledged the cases in which officers' dishonesty warranted discharge but observed the fact that dismissal is often appropriate does not mean "termination is the only appropriate penalty for every single act of dishonesty irrespective of the circumstances." While in certain circumstances a single episode of dishonesty may be sufficient to merit dismissal, such as in *Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270 (*Cate*), that case involved more egregious misconduct than Partridge's misconduct here—not only dishonesty but also encouraging a mentally ill patient to commit suicide, intimidating a witness, and abuse of power.

The trial court acknowledged Partridge's dishonesty would need to be disclosed to counsel for criminal defendants under *Brady v. Maryland* (1963) 373 U.S. 83 for the rest of his career, but concluded that because this single incident did not necessarily suggest a propensity to lie, cheat or deceive, Partridge could possibly be found credible in the future despite the false overtime claim. Therefore, the court concluded it was not unreasonable for the SPB to conclude Partridge's conduct was not likely to result in harm to the public because it did not necessarily render him unable to credibly testify.

Accordingly, the court concluded the SPB's reduction of discipline to a one-year suspension was not a manifest abuse of discretion. The CHP appeals.

## DISCUSSION

" '[In] a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its

19

discretion.' " (*Skelly*, *supra*, 15 Cal.3d at p. 217.)  "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404.)  " 'Only in an exceptional case will an abuse of discretion be shown because reasonable minds cannot differ on the appropriate penalty.' " (*Pasos v. Los Angeles County Civil Service Com.* (2020) 52 Cal.App.5th 690, 700.)  " 'The fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion.' " (*Cate, supra*, 204 Cal.App.4th at p. 284.)

"In considering whether [an] abuse [of discretion] occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' [Citations.]  Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly, supra*, 15 Cal.3d at p. 218.)

The CHP contends because Partridge was dishonest, he is likely to be dishonest again, and dismissal is the only appropriate penalty.  However, dismissal is not required in every case of dishonesty. (*County of Siskiyou v. State Personnel Bd.* (2010) 188 Cal.App.4th 1606, 1617 (*Siskiyou*).)  The CHP cites *Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 882 for the principle that "[n]o employer, including the state, is to be condemned for terminating one who has willfully defrauded his employer," but the question here is not whether the CHP is to be "condemned" for terminating Partridge but whether we can say no reasonable decisionmaker weighing the evidence and the

*Skelly* factors could possibly have decided that a one-year suspension without pay was the appropriate consequence for Partridge's wrongdoing.

We cannot say this is the exceptional case in which reasonable minds cannot differ as to the appropriate penalty. Partridge knowingly claimed several hours of unearned overtime pay on one occasion, a dishonest act and serious error in judgment that harmed the public and could cause the public to question the integrity of the CHP and its officers. His failure to enter the time he returned his patrol car on eight occasions was a violation of policy, but it did not necessarily signify wrongdoing as opposed to carelessness. When considering the misconduct and the surrounding circumstances, the SPB could reasonably conclude the evidence did not demonstrate Partridge had a propensity to lie, cheat, or deceive, and that what was at issue here was an isolated incident of very poor judgment, and occasional poor record completion, by an officer whose integrity and performance had not previously been called into question over many years with the CHP. In light of these conclusions, the SPB could reasonably believe the disciplinary proceedings and a one-year unpaid suspension would adequately deter Partridge from making any further claims for overtime pay to which he was not entitled or failing to keep accurate patrol car return time records.

We understand the strength and depth of the CHP's conviction that Partridge's conduct violated the public trust and the high standard of behavior expected of law enforcement officers. We agree that Patridge's conduct violated the public trust and CHP's high expectations for the conduct of its officers. Nevertheless, this does not establish that the SPB abused its

21

discretion with regard to penalty. CHP relies on *Kolender v. San Diego Civil Service Com.* (2005) 132 Cal.App.4th 716, 721 (*Kolender*), which states, "Dishonesty is not an isolated act; it is more a continuing trait of character. False statements, misrepresentations and omissions of material facts in internal investigations, if repeated, would result in continued harm to the public service." *Kolender*, however, involved an officer who lied to protect another officer who physically and verbally abused an inmate, and the officer did not admit the truth until investigators had discovered its falsity; this was not only dishonesty but complicity in covering up the abuse of an inmate. (*Id.* at pp. 719, 721–722.) *Kolender*'s pronouncements about dishonesty and character must be understood in that factual context. Without diminishing the seriousness of Partridge's misconduct, it was not comparable to Kolender's complicity in inmate abuse and lies to protect deputies who harmed inmates.

*Kolender* does not require the SPB to conclude Partridge's dishonesty was indicative of a character trait rather than a single instance of terrible judgment, nor does it mandate termination of employment anytime an employee is dishonest. (*Siskiyou*, *supra*, 188 Cal.App.4th at p. 1617 [*Kolender* "do[es] not compel discharge from employment as a penalty for dishonesty in every circumstance"].)

Emphasizing the seriousness of Partridge's misconduct and the injury it inflicted on law enforcement and the public, the CHP contends the SPB abused its discretion by "disregarding the overriding concern and looking at a totality of circumstances that included the length of [Partridge's] employment, the fact that he was only charged with one instance of dishonesty, and the relative 'minor' act of dishonesty in comparison with others who

22

stole more money." It argues Partridge's "dishonesty must override" his employment history in determining the appropriate penalty.

*Skelly* counsels otherwise. While the most significant consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service, the SPB is also charged with considering other relevant factors, including the circumstances surrounding the misconduct and the likelihood of its recurrence. (*Skelly*, *supra*, 15 Cal.3d at p. 218.) It is not a "disregard[ of] the overriding concern" for the SPB to consider the larger circumstances in which the misconduct occurred and to evaluate the likelihood it will recur—it is the SPB's obligation.

The CHP argues the SPB's totality of the circumstances assessment placed "undue emphasis" on Partridge's length of employment, lack of prior discipline, and performance ratings, but CHP's disagreement with how the SPB weighed the circumstances does not establish that it acted arbitrarily, capriciously, or beyond the bounds of reason. (*Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 21 [" 'once the SPB renders a decision, its determination regarding . . . what the appropriate penalty should be, will not be disturbed in a mandamus proceeding unless the SPB patently abused its exercise of discretion by acting arbitrarily, capricious, or beyond the bounds of reason' "].) The CHP also takes out of context the SPB's description of Partridge's failure to fully complete Form 33's as a "minor transgression in his haphazard completion of CHP forms" and inaccurately intimates the SPB considered Partridge's claim to unearned overtime pay a minor transgression ("Theft of public funds and falsifying official forms,

23

even once, is not a minor transgression for a sworn peace officer."). The SPB recognized Partridge's misconduct in claiming pay to which he was not entitled was extremely serious and highly injurious to the CHP and the public service, and at no time characterized it as a minor transgression.

The CHP contends the SPB "minimiz[ed] the gravity of Partridge's conduct" when it pointed out he did not engage in a pattern or practice of making false MAZEEP overtime claims, unlike other officers who had been dismissed. It asserts that "[c]omparing Partridge to other officers should not control the outcome in this case." This distorts the SPB's analysis. The SPB did not say other officers' cases controlled the outcome here or that Partridge could not be dismissed because other officers dismissed for false MAZEEP overtime claims had made multiple claims. Rather, the SPB referred to other officers' cases to contrast their systematic or extensive overtime fraud, which unmistakably evidenced a disposition toward dishonesty and a lack of integrity, with Partridge's one instance of poor judgment, an isolated event that in the SPB's opinion did not necessarily indicate he had a propensity to lie, cheat, or deceive.

The CHP argues upholding the SPB's decision "would only encourage dishonest officers to limit the amount and frequency of theft relative to others, not to avoid it altogether. In contrast, upholding the primacy of honesty in officers will deter even minor transgressions." Not only does the CHP not demonstrate why a yearlong unpaid suspension would lack deterrent effect, but also its policy argument does not establish an abuse of discretion in the penalty the SPB selected for Partridge's misconduct—a determination to which we must defer unless it is arbitrary,

24

capricious, or patently abusive.  (*Griego v. City of Barstow* (2023) 87 Cal.App.5th 133, 139 (*Griego*).)

Finally, the CHP complains the SPB interpreted Partridge's misconduct as a singular event when it was actually more extensive ("claiming overtime he did not work, and falsifying time records to cover up his false claim").  The CHP considers Partridge's failure to record the time his patrol vehicle was returned on eight Form 33s as demonstrating "a deliberate decision to conceal his dishonesty and mislead by omission" because the omission of return time on the forms made it difficult for CHP to detect an early departure for home.  While Partridge obviously did not comply with policy in executing these forms, it was not unreasonable for the SPB to conclude that his failure to enter the time he returned his patrol vehicle was not indicative of an intent to conceal a lack of entitlement to overtime or probative of his honesty concerning overtime claims because officer overtime pay was not based on Form 33 entries and none of his Form 33 omissions was meaningfully linked to a false overtime claim.

The CHP argues progressive discipline is unnecessary in serious willful misconduct cases and asserts the "mitigating factors do not outweigh the considerable discredit Partridge brought upon himself, the CHP, and the CHP's reputation."  This argument, again, indicates the CHP's disagreement with how the SPB weighed the relevant factors, but it does not establish the SPB's penalty choice "exceed[ed] the bounds of reason." (*Kolender, supra*, 132 Cal.App.4th at p. 721.)  The CHP asserts the SPB "abused its discretion when it suggested that the length of Partridge's employment and his satisfactory performance

25

somehow counterbalanced his dishonesty." This characterization of the SPB's ruling oversimplifies it to the point of inaccuracy.

"Although termination is an acceptable penalty for dishonesty by a public employee [citation], it does not ineluctably follow that dismissal is required in all cases of dishonesty." (*Siskiyou*, *supra*, 188 Cal.App.4th at p. 1617.) A reasonable decisionmaker could have dismissed Partridge, and a reasonable decisionmaker could have—and did—impose a one-year suspension without pay. "If reasonable minds may differ, there is no abuse of discretion." (*Griego*, *supra*, 87 Cal.App.5th at p. 139.)

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs, if any, on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

26

Filed 8/5/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CALIFORNIA HIGHWAY PATROL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>    Defendant and Respondent;<br><br>NATHANIEL PARTRIDGE,<br><br>    Real Party in Interest and Respondent. | B336135<br><br>(Los Angeles County<br>Super. Ct. No. 22STCP03433)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

    The opinion in the above-entitled matter filed on July 29, 2026, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

    There is no change in the judgment.

_____
STRATTON, P. J.           WILEY, J.           VIRAMONTES, J.